**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| JIGNESH PANDYA and | : | CASE NO.: 24-10440-amc |
| MITAL PANDYA | : | Honorable Ashely M. Chan |
| | : | |
| DEBTORS | : | |
| | : | Hearing Date: October 30, 2024 10:00 AM |
| | : | Objection Date: October 23, 2024 |

## NOTICE OF MOTION, RESPONSE DEADLINE AND HEARING DATE

    Univest Bank & Trust Co. has filed a Motion to Reopen Case for the Limited Purpose of Vacating the Automatic Stay *Nunc Pro Tunc* to February 9, 2024 and for Relief from Stay *Nunc Pro Tunc* to February 9, 2024 in your case pursuant to Section 362(d) of the Bankruptcy Code to lift the automatic stay and pursue its remedies against its collateral.

    **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult an attorney.)**

    1.  If you do not want the court to grant the relief sought in the motion or if you want the court to consider your views on the motion, then on or before October 23, 2024, you or your attorney must do <u>all</u> of the following:

        (a)  file an answer explaining your position at

United States Bankruptcy Court
Eastern District of Pennsylvania
Robert N.C. Nix Sr. Federal Courthouse
900 Market Street, Suite 204
Philadelphia, PA 19107

    If you mail your response to the court for filing, you must mail it early enough so the court will receive it or before the date stated above.

        (b)  mail a copy to the movant's attorney:

Amar A. Agrawal, Esquire
**Eisenberg, Gold & Agrawal, P.C.**
1040 Kings Highway North, Suite 200
Cherry Hill, New Jersey 08034
Tel: (856) 330-6200
Fax: (856) 330-6207

2.  If you or your attorney do not take the steps described in paragraphs 1(a) and 1(b) above and attend the hearing, the court may enter an order granting the relief requested in the motion.

3.  The hearing on the motion to vacate automatic stay will be scheduled to be held before the Honorable Ashely M. Chan, U.S.B.J. on October 30, 2024, at 10:00 a.m., United States Bankruptcy Court, 900 Market Street, Philadelphia, PA 19107.  Unless the court orders otherwise, the hearing on this contested matter will be an evidentiary hearing at which witnesses may testify with respect to disputed material factual issues in the manner directed by Fed.R.Bankr.P. 9014(d).

4.  If a copy of the motion is not enclosed, a copy of the motion will be provided to you if you request a copy from the attorney named in paragraph 1(b).

5.  You may contact the Bankruptcy Clerk's office at the Philadelphia Office at 215-408-4411 to find out whether the hearing has been canceled because no one filed an answer.

By:  _____

Amar A. Agrawal, Esquire

DATED: 09|12|2024

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| JIGNESH PANDYA and | : | CASE NO.: 24-10440-amc |
| MITAL PANDYA | : | Honorable Ashely M. Chan |
| | : | |
| DEBTORS | : | |
| | : | Hearing Date: October 30, 2024 10:00 AM |
| | : | Objection Date: October 23, 2024 |

**UNIVEST BANK & TRUST CO.'S MOTION TO REOPEN THE CASE FOR THE
LIMITED PURPOSE OF VACATING THE AUTOMATIC STAY *NUNC PRO TUNC* TO
FEBRUARY 9, 2024 AND FOR RELIEF FROM STAY *NUNC PRO TUNC* TO
FEBRUARY 9 2024**

NOW COMES Univest Bank & Trust Co. ("*Univest*" or "*Secured Creditor*"), by and through its attorney, Amar A. Agrawal, Esquire of Eisenberg, Gold & Agrawal, P.C., and files the following expedited Motion to Reopen Case for the Limited Purpose of Vacating the Automatic Stay *nunc pro tunc* to February 9, 2024 and for Relief from Stay Nunc Pro Tunc to February 9, 2024 against Debtors Jignesh Pandya and Mital Pandya ("Debtors" or "Pandya"), in the instant matter, and avers as follows:

**Parties**

1.      Secured Creditor is a duly organized and subsisting banking institution existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 16 Harbor Place, PO Box 197, Souderton, PA 189643.

2.      Debtors are adult individuals with a last known address of 8 Woodland Road, Newtown, PA 18940-2909.

**Jurisdiction**

3.      This Court has jurisdiction of the Motion by virtue of 11 U.S.C. 105, 361, 362 and 28 U.S.C. 157 and 1334.

4.      This is a "core" proceeding as that term is defined in 28 U.S.C. 157(b).

5.      The venue is proper pursuant to 28 U.S.C. 1408 and 1409.

### Background

6.      On December 29, 2011, the Defendant executed a Promissory Note (the "***Note***")
evidencing a certain loan in the principal amount of $3,920,000.00 from Plaintiff to Defendant.  A
copy of the Note is attached hereto as **Exhibit "A."**

7.      On December 29, 2011, ***JNP and MP*** made, executed, and delivered a Mortgage
(the "***Mortgage***") upon the Property to Plaintiff, which Mortgage was recorded on January 10,
2012, in the Office of the Recorder of Deeds of Bucks County as Instrument No. 2012002241 in
Book 6912 at Page 941. A copy of the Mortgage is attached hereto as **Exhibit "B."**

8.      The premises subject to the said Mortgage is 8 Woodland Road, Newtown, PA
18940 (Parcel No. 47-008-007-007) (the "***Property***").

9.      The said Mortgage is in default because the monthly interest and principal payment
due for May 1, 2023, and all subsequent payments thereafter have not been paid, and by the terms
of said Mortgage upon default in such payments of interest and principal for a period of thirty
(30) days, the principal and all interest due thereon is collectible forthwith.

10.     On or about August 16, 2024 Univest filed a Complaint in Mortgage Foreclosure
upon the Property (the "***Foreclosure***").

11.     On or about February 9, 2024, unbeknownst to Univest, Debtors filed a Chapter 11
bankruptcy in the above-captioned matter (the "***Bankruptcy***").

12.     On or about February 15, 2024 Judgment in mortgage foreclosure was entered in
the amount of $2,713,765.32 (the "***Judgment***").  A true and correct copy of the Judgment is
attached hereto as **Exhibit "C."**

13.    On March 8, 2024, Debtors and the United States Trustee entered into a Consent Order of Dismissal with Bar Against Refiling for a period of six months [Doc. 49].

14.    On or about April 1, 2024 Univest obtained a Writ of Execution (the "*Writ of Execution*") and scheduled a sheriff's sale for the Property.

15.    On or about April 12, 2024 the Property was exposed to a sheriff's sale by junior creditor Southern Shoals LLC, at which Southern Shoals LLC purchased the Property, subject to Univest's above-referenced Mortgage.   A sheriff's deed was recorded on June 3, 2024 as Instrument No. 2024021764.  A true and correct copy of the recorded Sheriff's Deed is attached hereto as **Exhibit "D."**

16.    As of August 30, 2024, the amount due on the Mortgage is $2,795,297.37, broken down more fully as follows:

| | |
|---|---:|
| Principal | $2,603,816.93 |
| Interest through August 30, 2024 | $98,379.62 |
| Late Fees | $8,518.57 |
| Forced Placed Insurance | $53,849.00 |
| Legal Fees | $11,514.00 |
| Legal Costs | $1,510.20 |
| Satisfaction Costs | $70.75 |
| Sheriff's Poundage | $17,638.30 |
| **Total Due as of August 30, 2024** | **$2,795,297.37** |

## Legal Argument

I.    **Univest is Entitled to Relief From the Automatic Stay *Nunc Pro Tunc* to February 9, 2024 as the Property is and Remains Unnecessary to an Effective Reorganization Under Section 362(d)(2) of the Code.**

17.    Relief from the automatic stay under §362(d)(2) may be granted if the debtor does not have equity in the property and the property is not "necessary to an effective reorganization".

18.    The secured creditor has the initial burden to demonstrate lack of equity which has been shown here.

19.    The debtor has the burden of proof on all other issues. See *In Re Ward,* 837F2d124, 128 (3d Cir. 1998). *See also* 11 U.S.C.§ 362(g).

20.    Where there is no equity, relief will be granted unless the debtor proves that the property is necessary to an effective reorganization. See *United States Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365 (1988).

21.    As explained by the Supreme Court in *Timbers of Inwood Forest,* the analysis of whether relief should be granted involves the concept of the property being "necessary to an effective reorganization":

> "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for a effective reorganization that is in prospect. This means as many lower courts, including the *en banc* in this case, have properly said that there must be" a reasonable possibility of a successful reorganization within a reasonable time.

*Id.375-76.*

22.    It is the debtors burden therefore to establish that the property is essential for a reorganization and that there is a reasonable possibility for a successful reorganization within a reasonable period of time.

23.    The Third Circuit has stated in *John Hancock Mutual Life Insurance Co. v. Route 37 Business Park Associates,* 987 F.2d 154, 157(3d Cir. 1993) that a plan must have "a realistic chance of being confirmed."

24.    The balance due on the mortgage is $2,795,297.37.

25.     The value of the Property as of August 23, 2024 is $2,048,800.00.  A true and correct copy of the valuation report is attached hereto as **Exhibit "E."**

26.     Based on the equity analysis, there is negative equity in the Property of $746,497.37.

27.     The Debtor clearly lacks equity in the Property.

28.     In addition, based on Southern Shoals LLC's junior lienholder sheriff sale and deed, which is subject to Univest's Mortgage, the Property is no longer part of the Debtor's estate and clearly not necessary to an effective reorganization.

29.     Accordingly, Univest is entitled to have this matter reopened for the limited purpose of granting the relief from stay *nunc pro tunc* to the date of the filing of the above-captioned matter, February 9, 2024 requested herein, and is indeed entitled to relief from the automatic stay under §362(d)(2) *nunc pro tunc* to the date of the filing of the above-captioned matter, February 9, 2024.

**WHEREFORE,** Univest Bank & Trust Co. respectfully requests that upon final hearing of its Motion the following relief: (1) the above-captioned matter is hereby reinstated for the sole, limited purpose of granting the relief requested in this Motion; (2) the Automatic Stay of all proceedings, as provided in Section 362 of the Bankruptcy Reform Act of 1979 (the "Code") 11 U.S.C. §362, is modified , *nunc pro tunc* to February 9, 2024 with respect to the premises located at 8 Woodland Road, Newtown, PA 18940 (Parcel No. 47-008-007-007) (the "Property"); (3) that the stay terminate upon entry of this Order pursuant to the authority granted by Fed.R.Bank.P., Rule 4001(a)(3); (4) that the Movant is permitted to proceed with its state court remedies as to the Property including, but not limited to causing the Property to be offered at Sheriff's Sale, permitting the Sheriff to issue deeds to any purchasers at the Sheriff's sale and allowing at the Sheriff's Sale

(or purchasers' assignees) to take any legal action for enforcement of their right to possession of the Property; and (5) Univest Bank & Trust Co. be granted such other and further relief as is just.

Respectfully submitted,

Amar A. Agrawal, Esq.
Eisenberg, Gold & Agrawal, P.C.
*Attorneys for Secured Creditor Univest Bank & Trust Co.*

Dated: 09|12|2024

EXHIBIT "A"

Loan Number:

# ADJUSTABLE   RATE   NOTE

(LIBOR One-Year Index (As Published In *The Wall Street Journal*)  - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

December 29, 2011                         Doylestown                         Pennsylvania
[Date]                                   [City]                              [State]

8 Woodland Road
Newtown, PA 18940

[Property  Address]

I.   BORROWER'S  PROMISE  TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 3,920,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
Univest Bank and Trust Co.,
corporation
I will make all payments under this Note in the form of cash, check or money order.

I understand  that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of             4.000  %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.   PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on          February 1, 2012           .
I will make these payments  every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on         January 1, 2042         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  14 North Main St, PO Box 64197
Souderton, PA 18964                                           or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 18,714.68              . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

UNIVEST BANK AND TRUST CO. MODIFIED
MULTISTATE   ADJUSTABLE   RATE  NOTE - WSJ One-Year  LIBOR - Single Family - Fannie  Mae UNIFORM  INSTRUMENT
Wolters Kluwer Financial Services                                          Form  3526  6/01
VMP ® -166N (0806)
Page 1 of 5

4.   **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   **(A) Change Dates**

   The interest rate I will pay may change on the first day of          January, 2015          , and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**

   Beginning  with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose  a new index which is based  upon  comparable  information. The Note Holder will give me notice of this choice.

   **(C) Calculation of Changes**

   Before each Change Date, the Note Holder will calculate my new interest rate by adding
Two and Three Quarters                 percentage  points  (                        2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded  amount will be my new interest rate until the next Change Date.

   The Note Holder will then determine  the amount of the monthly payment that would be sufficient to repay the unpaid principal that  I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

   **(D) Limits on Interest Rate Changes**

   The interest rate I am required to pay at the first Change Date will not be greater than                    6.000 % or less than                  2.750 %. Thereafter, my interest rate will never be increased or decreased  on any single  Change Date by more than two percentage  points  from the rate of interest I have been paying  for the preceding  12 months. My interest rate will never be greater than                          10.000%.
**My interest rate will never be less than 2.750%.**

   **(E) Effective Date of Changes**

   My new interest rate will become  effective  on each Change Date. I will pay the amount of my new monthly payment beginning  on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

   **(F) Notice of Changes**

   The Note Holder will deliver or mail to me a notice of any changes  in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding  the notice.

5.   **BORROWER'S  RIGHT TO PREPAY**

   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When  I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

   I may make a full Prepayment or partial Prepayments  without paying  a Prepayment charge. The Note Holder will use my Prepayments  to reduce the amount  of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying  my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes  in the due dates of my monthly payment unless  the Note Holder agrees in writing to those changes.  My partial Prepayment may reduce the amount of my monthly payments  after the first Change Date following  my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.   **LOAN CHARGES**

   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted  so that the interest or other loan charges  collected or to be collected  in connection  with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary  to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing  the Principal I owe under this Note or by making  a direct payment to me. If a refund reduces  Principal, the reduction will be treated  as a partial Prepayment.

UNIVEST BANK AND TRUST CO. MODIFIED

MULTISTATE   ADJUSTABLE   RATE NOTE - WSJ One-Year   LIBOR - Single Family - Fannie  Mae UNIFORM  INSTRUMENT

Form  3526  6/01

VMP ® -166N  (0406)                    Page 2 of 5



7.   BORROWER'S   FAILURE TO PAY AS REQUIRED
    (A) Late Charges   for Overdue Payments
    If the Note Holder has not received the full amount of any monthly payment by the end of          15          calendar days
after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be                          5.000 % of
my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
    (B) Default
    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
    (C) Notice of Default
    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a
certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all
the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or
delivered by other means.
    (D) No Waiver By Note Holder
    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above,
the Note Holder will still have the right to do so if I am in default at a later time.
    (E) Payment of Note Holder's Costs and Expenses
    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be
paid back by me for all of its costs and expenses in enforcing  this Note to the extent not prohibited by applicable law. Those
expenses include, for example, reasonable attorneys' fees.
8.   GIVING OF NOTICES
    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by
delivering  it or by mailing it by first class mail to me at the Property Address  above or at a different address  if I give the Note
Holder a notice of my different address.
    Any notice that must be given to the Note Holder under this Note will be given by delivering  it or by mailing it by first
class mail to the Note Holder at the address stated  in Section 3(A) above or at a different address  if I am given a notice of that
different address.
9.   OBLIGATIONS  OF PERSONS  UNDER THIS NOTE
    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in
this Note, including  the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser  of this Note
is also obligated to do these things.  Any person who takes over these obligations, including  the obligations of a guarantor,
surety or endorser  of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce
its rights under this Note against each person individually or against all of us together. This means that any one of us may be
required to pay all of the amounts owed under this Note.
10.   WAIVERS
    I and any other person who has obligations  under this Note waive the rights of Presentment  and Notice of Dishonor.
"Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means
the right to require the Note Holder to give notice to other persons  that amounts due have not been paid.
11.   UNIFORM SECURED NOTE
    This Note is a uniform instrument  with limited variations in some jurisdictions. In addition to the protections  given to the
Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as
this Note, protects  the Note Holder from possible  losses  which might result if I do not keep the promises which I make in this
Note. That Security Instrument describes how and under what conditions  I may be required to make immediate payment in full
of all amounts I owe under this Note. Some of those conditions  are described  as follows:

        If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is
    not a natural person  and a beneficial interest in Borrower is sold or transferred)  without Lender's prior
    written consent, Lender may require immediate payment in full of all sums secured by this Security
    Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by
    Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes  to be submitted to Lender
    information required by Lender to evaluate the intended transferee as if a new loan were being made to the
    transferee; and (b) Lender reasonably  determines that Lender's security will not be impaired by the loan
    assumption  and that the risk of a breach of any covenant  or agreement in this Security Instrument is
    acceptable to Lender.

UNIVEST BANK AND TRUST CO. MODIFIED
MULTISTATE   ADJUSTABLE   RATE NOTE - WSJ One-Year   LIBOR - Single Family - Fannie  Mae UNIFORM  INSTRUMENT
                                                                                      Form  3528  6/01
VMP ® -166N  (0806)                              Page 3 of 5



To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.
SIGNATURE PAGE FOLLOWS.

UNIVEST BANK AND TRUST CO. MODIFIED
MULTISTATE   ADJUSTABLE   RATE NOTE - WSJ One-Year   LIBOR - Single Family - Fannie Mae UNIFORM INSTRUMENT

Form 3526 6/01

VMP ® -166N (0806)                                          Page 4 of 5



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Biresh N Pandya                                    -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

*[Sign Original Only]*

UNIVEST BANK AND TRUST CO. MODIFIED
MULTISTATE   ADJUSTABLE   RATE NOTE - WSJ One-Year   LIBOR - Single Family - Fannie Mae UNIFORM INSTRUMENT
                                                        Form 3526 6/01
VMP ® -166N (3608)                    Page 5 of 5

EXHIBIT "B"

## BUCKS COUNTY RECORDER OF DEEDS
### 55 East Court Street
### Doylestown, Pennsylvania  18901
### (215) 348-6209

Instrument Number - 2012002241
Recorded On 1/10/2012 At 7:58:54 AM                    * Total Pages - 27
* Instrument Type - MORTGAGE - CORPORATIONS
Invoice Number - 478172          User -  SMC
* Mortgagor - PANDYA, JIGNESH N   — / 3 82//05 7
* Mortgagee - UNIVEST BK & TR CO
* Customer - SIMPLIFILE LC E-RECORDING
* FEES
RECORDING FEES          $109.00
TOTAL PAID              $109.00

---

This is a certification page

# DO NOT DETACH

This page is now part
of this legal document.

---

RETURN DOCUMENT TO:
ROBERT CHALPHIN ASSOC SOUTH
735 STREET ROAD
SOUTHAMPTON, PA 18966

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Joseph J. Szafran, Jr.
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

Book: **6912**  Page: **941**

Prepared By:
Univest Bank and Trust Co.
14 North Main St, PO Box 64197
Souderton, PA 18964

Return To:
Univest Bank and Trust Co.
14 North Main St, PO Box 64197
Souderton, PA 18964

Parcel Number: 47-8-7-7

Premises:
8 Woodland Road
Newtown, PA 18940

—————————— [Space Above This Line For Recording Data] ——————————

# PURCHASE MONEY
# MORTGAGE

Loan Number: 138211057

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated            December 29, 2011          , together with all Riders to this document.

**(B) "Borrower"** is
JIGNESH N. PANDYA MITAL PANDYA

Borrower is the mortgagor under this Security Instrument.

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (0907).00
Page 1 of 17



(C) **"Lender"** is  Univest Bank and Trust Co.
Lender is a  corporation
organized and existing  under the laws of                                        PENNSYLVANIA
Lender's address is  14 North Main St, PO Box 64197
Souderton, PA 18964
Lender is the mortgagee under this Security Instrument.

(D) **"Note"** means the promissory note signed by Borrower and dated                    December 29, 2011
The Note states  that Borrower owes Lender
Three Million Nine Hundred Twenty Thousand and 00/100                                                      Dollars
(U.S. $3,920,000.00                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments
and to pay the debt in full not later than                    January 1, 2042

(E) **"Property"** means the property that is described below under the heading  "Transfer of Rights in the Property."

(F) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.

(G) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to
be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable  Rate Rider | [ ] Condominium Rider | [ ] Second  Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development  Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | |
| [ ] Other(s) [specify] | | |

(H) **"Applicable Law"** means all controlling  applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable  judicial
opinions.

(I) **"Community Association  Dues, Fees, and Assessments"**  means all dues, fees, assessments  and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association  or similar
organization.

(J) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction  originated by check, draft, or
similar paper instrument,  which is  initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as  to order, instruct, or authorize a financial institution  to debit or credit an account.  Such term
includes,  but is not limited to, point-of-sale  transfers,  automated teller machine transactions,  transfers initiated by
telephone, wire transfers, and automated clearinghouse  transfers.

(K) **"Escrow Items"** means those items that are described in Section 3.

(L) **"Miscellaneous  Proceeds"**  means any compensation,  settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds  paid under the coverages described in Section 5) for: (i) damage to, or
destruction  of, the Property; (ii) condemnation  or other taking of all or any part of the Property; (iii) conveyance  in
lieu of condemnation;  or (iv) misrepresentations  of, or omissions as to, the value and/or condition of the Property.

(M) **"Mortgage Insurance"** means insurance protecting  Lender against the nonpayment  of, or default on, the Loan.



**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the                 County           [Type of Recording Jurisdiction] of                            Bucks                            [Name of Recording Jurisdiction]:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF, AS EXHIBIT 'A'

which currently has the address of
8 Woodland Road
                                                                                             [Street]
Newtown                                    [City] , Pennsylvania        18940    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency.

PENNSYLVANIA  - Single Family - Fannie Mae/Freddie  Mac UNIFORM  INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA)  (0907).00
Page 3 of 17



However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                     Form 3039 1/01
VMP ®                                                                                                         VMP6(PA) (0907).00
Wolters Kluwer Financial Services                                                                             Page 4 of 17

Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.

PENNSYLVANIA  - Single Family - Fannie Mae/Freddie Mac UNIFORM  INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3038 1/01
VMP6(PA)  (0907).00
Page 5 of 17



If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.

PENNSYLVANIA  - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA)  (0907).00
Page 6 of 17



If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.

PENNSYLVANIA   - Single Family - Fannie Mae/Freddie Mac UNIFORM   INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA)   (0907).00
Page 7 of 17



Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

PENNSYLVANIA  - Single Family - Fannie Mae/Freddie Mac UNIFORM  INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA)  (0907).00
Page 8 of 17



As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

PENNSYLVANIA  - Single Family - Fannie Mae/Freddie Mac UNIFORM  INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3038 1/01
VMP6(PA)  (0907).00
Page 9 of 17



If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.



If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

PENNSYLVANIA  - Single Family - Fannie Mae/Freddie Mac UNIFORM  INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (0907) 00
Page 11 of 17



If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.



**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** **Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.**

**Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

PENNSYLVANIA   - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA)  (0907).00
Page 13 of 17



**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.
SIGNATURE PAGES FOLLOW.

PENNSYLVANIA  - Single  Family - Fannie Mae/Freddie  Mac UNIFORM  INSTRUMENT
VMP ®
Wolters  Kluwer  Financial  Services

Form  3039  1/01
VMP6(PA)  (0907).00
Page  14 of 17

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____

_____    _____ (Seal)
Jignesh N Pandya                                                                     -Borrower

_____    _____ (Seal)
Mital Pandya                                                                             -Borrower

_____ (Seal)
                                                                                           -Borrower

_____ (Seal)
                                                                                           -Borrower

**ADDITIONAL  BORROWER  SIGNATURES  ON NEXT PAGE.**



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

PENNSYLVANIA  - Single  Family - Fannie Mae/Freddie  Mac UNIFORM   INSTRUMENT                                Form 3039 1/01
VMP ®                                                                                          VMP6(PA)  (0907).00
Wolters Kluwer Financial Services                                                                   Page 16 of 17



COMMONWEALTH OF PENNSYLVANIA, *BUCKS*                          County ss:

On this, the 29th day of December, 2011, before me, the undersigned officer, personally appeared

Jignesh N. Pandya and Mital Pandya

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: 3/17/14

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Ashley Pascen, Notary Public
Doylestown Twp., Bucks County
My Commission Expires March 17, 2014
Member, Pennsylvania Association of Notaries

_____
Title of Officer

Certificate of Residence

I, David C Walbrandt, do hereby certify that the correct address of
the within-named Mortgagee is

14 N. Main St, Souderton, PA 18964

Witness my hand this 29th day of December, 2011.

_____
Agent of Mortgagee

PENNSYLVANIA  - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA)  (0907).00
Page 17 of 17

# *SCHEDULE  "C"*

NUMBER:  **146945-UCA**

ALL THAT CERTAIN lot or piece of ground, hereditaments and appurtenances, Situate in the Township of Upper Makefield, County of Bucks and State of Pennsylvania, described according to a Final Subdivision Plan of Woodland Acres, made by All County, Inc., dated 9/5/1978 and last revised 6/12/1980 and recorded 7/2/1980 in Plan Book 197 page 27, bounded and described as follows, to wit:

BEGINNING at a point on the Southwesterly side of Woodland Road (50 feet wide, a private road), a corner of Lot 8 on said plan; thence extending from said beginning point and along the said Southwesterly side of Woodland Road, South 27 degrees 49 minutes 21 seconds East, 266.25 feet to a point, at the beginning of the cul-de-sac of Woodland Road; thence extending along the cul-de-sac of Woodland Road, the two (2) following courses and distances:   (1) on the arc of a circle curving to the right having a radius of 30 feet, the arc distance of 29.67 feet to a point of reverse curve; and (2) on the arc of a circle curving to the left having a radius of 62 feet, the arc distance of 80.58 feet to a point, a corner of Lot 6 on said Plan; thence extending along line of Lot 6, the two (2) following courses and distances, viz.:   (1) South 41 degrees West 138.00 feet to a point; and (2) South 30 degrees 16 minutes 07 seconds East, 384.81 feet to a point; thence extending along lands now or late of John and Bertha Malcick , North 76 degrees 50 minutes 51 seconds West, 1,248.95 feet to a point; thence extending along line of Lot 8 on said plan, the two (2) following courses and distances, viz.:   (1) North 63 degrees 34 minutes 27.4 seconds East, 913.29 feet to a point; and (2) North 62 degrees 10 minutes 39 seconds East, 175 feet to the first mentioned point and place of beginning.

BEING Lot 7 on said plan.

CONTAINING 10 acres of land, more or less.

BEING County Parcel # 47-8-7-7.

BEING THE SAME PREMISES WHICH Edward N. Stevenson,, by Deed dated 10/28/2005 and recorded 11/30/2005 in Bucks County, Pennsylvania in Land Record Book 4732, Page Page 1175, granted and conveyed unto John C. Melching, Jr. and Mary S. Melching, in fee.



# ADJUSTABLE RATE RIDER

**(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)**

Loan Number: 138211057

THIS ADJUSTABLE RATE RIDER is made this    29th    day of          December, 2011          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust,
or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

Univest Bank and Trust Co.,

corporation

(the "Lender") of the same date and covering the property described in the Security Instrument and
located at:

8 Woodland Road
Newtown, PA 18940

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of          4.000 %. The Note provides for changes in
the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of          January, 2015          ,
and on that day every 12th month thereafter. Each date on which my interest rate could change is
called a "Change Date."

**UNIVEST BANK AND TRUST CO. MODIFIED**
**MULTISTATE  ADJUSTABLE  RATE  RIDER - WSJ One-Year  LIBOR - Single  Family - Fannie Mae
UNIFORM  INSTRUMENT**

**Form 3189 6/01**

Wolters Kluwer Financial Services
VMP ® -166R (0806)
Page 1 of 4          Initials 
DDS-LRD

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Two and Three Quarters                                                    percentage points
(                        2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than
6.000 % or less than                   2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than
10.000 %. **My interest rate will never be less than 2.750%.**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**UNIVEST BANK AND TRUST CO. MODIFIED**
MULTISTATE  ADJUSTABLE  RATE  RIDER - WSJ  One-Year  LIBOR  - Single  Family - Fannie  Mae
UNIFORM INSTRUMENT
VMP ® -166R (0806)                          Page 2 of 4          Initials _____ (mp) Form 3189 6/01
DDS-LRD

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**UNIVEST BANK AND TRUST CO. MODIFIED**
MULTISTATE ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family - Fannie Mae
UNIFORM INSTRUMENT
VMP ® -166R (0806)                     Page 3 of 4             Initials: _____    Form 3189 6/01
DDS-LRD

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
Jignesh N Pandya                                                        -Borrower

_____ (Seal)
Mital Pandya                                                             -Borrower

_____ (Seal)
                                                                         -Borrower

_____ (Seal)
                                                                         -Borrower

**UNIVEST BANK AND TRUST CO. MODIFIED**
**MULTISTATE  ADJUSTABLE  RATE  RIDER - WSJ  One-Year  LIBOR** - Single  Family - **Fannie  Mae**
**UNIFORM  INSTRUMENT**
VMP ® -166R  (0806)                                    Page 4 of 4                              Form  3189  6/01
DDS-LRD

# PLANNED   UNIT DEVELOPMENT   RIDER

Loan Number: 138211057

THIS PLANNED UNIT DEVELOPMENT RIDER is made this                29th              day of December, 2011                     , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to

Univest Bank and Trust Co.,
corporation
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

8 Woodland Road
Newtown, PA 18940

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

THE DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS.

(the "Declaration"). The Property is a part of a planned unit development known as

Woodland Acres

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

PUD Rider - 1sts
VMP ®
Wolters Kluwer Financial Services ©2009

T0186 (0911)
Page 1 of 4



**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

---

PUD Rider - 1sts
VMP ®
Wolters Kluwer Financial Services ©2009

T0186 (0911)
Page 2 of 4



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
Jignesh N Pandya                                       -Borrower

_____ (Seal)
Mital Pandya                                           -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

ADDITIONAL  BORROWER  SIGNATURES  ON NEXT PAGE.

PUD Rider - 1sts
VMP ®
Wolters Kluwer Financial Services ©2009

T0186 (0911)
Page 3 of 4



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
                                                            -Borrower

_____ (Seal)
                                                            -Borrower

_____ (Seal)
                                                            -Borrower

PUD Rider - 1sts
VMP ®                                                T0186 (0911)
Wolters Kluwer Financial Services ©2009                Page 4 of 4



EXHIBIT "C"

Case# 2023-04916-12 - JUDGE:27 Received at County of Bucks Prothonotary on 02/15/2024 9:54 AM, Fee = $26.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents
E-Filed by: AMAR AGRAWAL, ESQ.

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

UNIVEST BANK & TRUST CO
vs.
JIGNESH N PANDYA
MITAL PANDYA

NO. 2023-04916

### PRAECIPE FOR DEFAULT JUDGMENT

To the Prothonotary:

Enter judgment in favor of UNIVEST BANK & TRUST CO and against JIGNESH N PANDYA; MITAL PANDYA for want of an answer.

| | |
|---|---|
| Amount claimed in complaint (less credit, if any): | $ 2615108.93 |
| Interest: | $ 37684.53 |
| Misc: | $ 60971.86 |
| Total: | $2,713,765.32 |
| Possession: | X |

I certify that written notice of the intention to file this praecipe was mailed or delivered to the party against whom judgment is to be entered and to his/her attorney of record, if any, after the default occurred and at least ten (10) days prior to the date of the filing of this praecipe.  A copy of the notice is attached.  R.C.P. 237.1

ORIGINAL SIGNATURE RETAINED BY THE FILING PARTY
Signature

AMAR AGRAWAL, ESQ.
Filing Party

308159
ID Number

EISENBERG, GOLD & AGRAWAL, P.C.
Firm Name

1040 NORTH KINGS HIGHWAY, SUITE 200
Address

CHERRY HILL, NJ 08034

856-330-6200
Phone

Judgment is entered in favor of  UNIVEST BANK & TRUST CO  and against JIGNESH N PANDYA; MITAL PANDYA  by default for want of an answer.

_Coleen Christian_

_____
                                            PROTHONOTARY

Case# 2023-04916-12 - JUDGE:27 Received at County of Bucks Prothonotary on 02/15/2024 9:54 AM, Fee = $26.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: AMAR AGRAWAL, ESQ.

Case# 2023-04916-12 - JUDGE.27 Received at County of Bucks Prothonotary on 02/15/2024 9:54 AM, Fee = $26.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: AMAR AGRAWAL, ESQ.

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

UNIVEST BANK & TRUST CO
vs.
JIGNESH N PANDYA
MITAL PANDYA

**NO.  2023-04916**

NOTICE UNDER PA R.C.P. 236 IS GIVEN THAT A JUDGMENT IN THE ABOVE CAPTIONED MATTER HAS BEEN ENTERED AGAINST YOU.

_Coleen Christian_

PROTHONOTARY

IF YOU HAVE ANY QUESTIONS CONCERNING THE ABOVE, PLEASE CONTACT:

ORIGINAL SIGNATURE  RETAINED BY THE FILING PARTY
Signature

AMAR AGRAWAL, ESQ.
Filing Party

308159
ID Number

EISENBERG, GOLD & AGRAWAL, P.C.
Firm Name

1040 NORTH KINGS HIGHWAY, SUITE 200
Address

CHERRY HILL, NJ 08034

856-330-6200
Phone

EXHIBIT "D"

## BUCKS COUNTY RECORDER OF DEEDS
55 East Court Street
Doylestown, Pennsylvania  18901
(215) 348-6209

Instrument Number – 2024021764
Recorded On 6/3/2024 At 3:32:19 PM                    * Total Pages – 5
* Instrument Type - DEED
Invoice Number – 1381496          User - KLJ
* Grantor - PANDYA, MITAL
* Grantee - SOUTHERN SHOALS
* Customer - SHERIFFS DEPARTMENT
* FEES

RECORDING FEES          $81.75
TOTAL PAID              $81.75

Bucks County UPI Certification
On June 3, 2024 By LMC

This is a certification page

### DO NOT DETACH

This page is now part
of this legal document.

RETURN DOCUMENT TO:
SHERIFFS DEPARTMENT
ATTN: CLAIRE

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Daniel J. McPhillips
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.



EXHIBIT
4



1C3E0D

Prepared By    SHERIFF

RECEIVED

2024 JUN -3 P 6: 18

BUCKS COUNTY
RECORDER OF DEEDS

Return To    SCOTT ROTHMAN

CPN # 47-008-007-007

# Deed Poll

## Sheriff of Bucks County, Pa.
### TO
### SOUTHERN SHOALS

Sold    APRIL 12, 2024

Dated   JUNE 3, 2024

For     8 WOODLAND ROAD
        NEWTOWN, PA  18940
        (UPPER MAKEFIELD TOWNSHIP)

Sold as the Property of   MITAL PANDYA AND JIGNESH PANDYA
AKA JIGNESH N PANDYA

At the Suit of  SOUTHERN SHOALS LLC

For the Sum of $1,813.00

𝕶𝖓𝖔𝖜 𝖆𝖑𝖑 𝕸𝖊𝖓 𝖇𝖞 𝖙𝖍𝖊𝖘𝖊 𝕻𝖗𝖊𝖘𝖊𝖓𝖙𝖘, THAT I, FREDERICK A. HARRAN,

Sheriff of the County of Bucks, in the State of Pennsylvania, for the consideration of

the sum of **$1,813.00 (ONE THOUSAND EIGHT HUNDRED THIRTEEN AND NO/100**

**DOLLARS)**, to me in hand paid, do hereby

grant and convey to

## SOUTHERN SHOALS

# NO. 2023-02569

BEGINNING at a point on the Southwesterly side of Woodland Road (50 feet wide, a private road), a corner of Lot 8 on said plan; thence extending from said beginning point and along the said Southwesterly side of Woodland Road, South 27 degrees 49 minutes 21 seconds East, 266.25 feet to a point, at the beginning of the cul-de-sac of Woodland Road; thence extending along the cul-de-sac of Woodland Road, the two (2) following courses and distances: (1) on the arc of a circle curving to the right having a radius of 30 feet, the arc distance of 29.67 feet to a point of reverse curve; and

(2) on the arc of a circle curving to the left having a radius of 62 feet, the arc distance of 80.58 feet to a point, a corner of Lot 6 on said Plan; thence extending along line of Lot 6, the two (2) following courses and distances, viz.: (1) South 41 degrees West 138.00 feet to a point; and (2) South 30 degrees 16 minutes 07 seconds East, 384.81 feet to a point; thence extending along lands now or late of John and Bertha Malcick, North 76 degrees 50 minutes 51 seconds West, 1,248.95 feet to a point; thence extending along line of Lot 8 on said plan, the two (2) following courses and distances, viz.:

(1) North 63 degrees 34 minutes 27.4 seconds East, 913.29 feet to a point; and (2) North 62 degrees 10 minutes 39 seconds East, 175 feet to the first mentioned point and place of...beginning.

BEING Lot 7 on said Plan.

CONTAINING 10 ACRES OF LAND, MORE OR LESS.

BEING THE SAME PREMISES WHICH  Edward N. Stevenson,, by Deed dated 10/28/2005 and recorded 11/30/2005 in Bucks County, Pennsylvania in Land Record Book 4732, Page 1175, granted and conveyed unto John C. Melching, Jr. and Mary S. Melching, in fee.

BEING the same premises conveyed to Mital Pandya and Jignesh N. Pandya, by Deed executed by John C. Melching, Jr. and Mary S. Melching on December 28, 2011 and recorded on January 10, 2012 as Instrument No. 2012002240.

UPI No. 47-008-007-007

Address: 8 WOODLAND ROAD, NEWTOWN, PA 18940

*the same having been sold by me to the said grantee, on the 12TH day of APRIL*
*Anno Domini two thousand  TWENTY-FOUR*
*after due advertisement according to law, under and by virtue of a*
*Writ of EXECUTION*
*issued on the 16TH day of AUGUST Anno Domini  two thousand TWENTY-THREE*
*out of the Court of Common Pleas  of the said Court of Bucks County*
*as of Term, two thousand*

*Number*   2023-02569

*at the suit of*    SOUTHERN SHOALS LLC

*Against*    MITAL PANDYA AND JIGNESH PANDYA AKA JIGNESH N PANDYA

*IN WITNESS WHEREOF; I have hereunto affixed my signature, this*

*3RD day of  JUNE   Anno Domini    two thousand TWENTY-FOUR*

*Sealed and delivered in the presence of us:*

*Commonwealth of Pennsylvania, ss.*                    *Frederick A. Harran*          *Sheriff*

*Before the undersigned Deputy Prothonotary of the Court of Common Pleas of Bucks County,*
*personally appeared Frederick A. Harran, Sheriff of Bucks County, aforesaid, and in due*
*form of law declared that the facts set forth in the foregoing deed are true, and that he*
*acknowledged the same in order that said deed might be recorded.*
*Witness my hand and seal of said court, this 3RD day of  JUNE Anno Domini*
*two thousand  TWENTY-FOUR*

*Deputy Prothonotary*

Marie  L.  Di  Salvo

*I hereby certify that the precise residence of the grantee within named is:*

1457 Medinah Lane
Murrells LN, SC  29576

*Sheriff*

Frederick A. Harran

**pennsylvania**
DEPARTMENT OF REVENUE
(EX) MOD 06-19 (FI)

1830019105

**REV-183**
BUREAU OF INDIVIDUAL TAXES
PO BOX 280603
HARRISBURG, PA 17128-0603

**REALTY TRANSFER TAX
STATEMENT OF VALUE**
COMPLETE EACH SECTION

RECORDER'S USE ONLY

State Tax Paid:

Book: | Page:

Instrument Number:

Date Recorded:

| SECTION I | TRANSFER DATA |
|---|---|

Date of Acceptance of Document

| Grantor(s)/Lessor(s) **Bucks County Sheriff** | Telephone Number | Grantee(s)/Lessee(s) **Southern Shoals** | Telephone Number |
|---|---|---|---|
| Mailing Address **100 N Main Street** | | Mailing Address **1457 Medinah Lane** | |

| City **Doylestown** | State **PA** | ZIP Code **18901** | City **Murrells LN** | State **SC** | ZIP Code **29576** |
|---|---|---|---|---|---|

| SECTION II | REAL ESTATE LOCATION |
|---|---|

| Street Address **8 Woodland Road** | City, Township, Borough **Upper Makefield Township** |
|---|---|

| County **Bucks** | School District **Council Rock** | Tax Parcel Number **47-008-007-007** |
|---|---|---|

| SECTION III | VALUATION DATA |
|---|---|

Was transaction part of an assignment or relocation?  ◯ YES    ◯ NO

| 1. Actual Cash Consideration ~~1.00~~ 1813.00 | 2. Other Consideration + 0.00 | 3. Total Consideration = ~~1.00~~ 1813.00 |
|---|---|---|
| 4. County Assessed Value 437,570.00 | 5. Common Level Ratio Factor x 14.93 | 6. Computed Value = 6,532,920.10 |

| SECTION IV | EXEMPTION DATA - Refer to instructions for exemption status. |
|---|---|

| 1a. Amount of Exemption Claimed $ 6,532,920.10 | 1b. Percentage of Grantor's Interest in Real Estate 100 % | 1c. Percentage of Grantor's Interest Conveyed 100 % |
|---|---|---|

2. Fill in the Appropriate Oval Below for Exemption Claimed.

◯ Will or intestate succession. _____
(Name of Decedent)                    (Estate File Number)

◯ Transfer to a trust. (Attach complete copy of trust agreement and all amendments.)

◯ Transfer from a trust. (Attach complete copy of trust agreement and all amendments.)

◯ Transfer between principal and agent/straw party. (Attach complete copy of agency/straw party agreement.)

◯ Transfers to the commonwealth, the U.S. and instrumentalities by gift, dedication, condemnation or in lieu of condemnation.
(If condemnation or in lieu of condemnation, attach copy of resolution.)

◯ Transfer from mortgagor to a holder of a mortgage in default. (Attach copy of mortgage and note/assignment.)

◯ Corrective or confirmatory deed. (Attach complete copy of the deed to be corrected or confirmed.)

◯ Statutory corporate consolidation, merger or division. (Attach copy of articles.)

⬤ Other (Provide a detailed explanation of exemption claimed. If more space is needed attach additional sheets.)

Foreclosure Deed

| SECTION V | CORRESPONDENT INFORMATION - All inquiries may be directed to the following person: |
|---|---|

| Name **Scott Rothman** | Telephone Number **610-772-1031** |
|---|---|
| Mailing Address **1100 E. Hector St. #425** | City **Conshohocken** | State **PA** | ZIP Code **19428** |

Under penalties of law, I declare that I have examined this statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

| Signature of Correspondent or Responsible Party | Date **5/20/24** |
|---|---|

FAILURE TO COMPLETE THIS FORM PROPERLY OR ATTACH REQUESTED DOCUMENTATION MAY RESULT IN THE RECORDER'S REFUSAL TO RECORD THE DEED.

1830019105                    1830019105

PAGE 1

EXHIBIT "E"

Freddie Mac's

# Home Value Explorer®


Freddie Mac
Single-Family

## Order Information

| | |
|---|---|
| FA Order# | 91934014 |
| Report Date | 08/23/2024 |
| Customer Reference# | 634641962 |
| Transaction Identifier | 1671228713 |

## Property Address

| | |
|---|---|
| Address | 8 Woodland Rd |
| City/State/Zip | Newtown, PA 18940-2909 |
| County | BUCKS |
| Borrower | SOUTHERN SHOALS |

| Model | Low Value Estimate | Point Value Estimate | High Value Estimate | Confidence Score | FSD Score |
|---|---|---|---|---|---|
| HVE Premier | $1,442,322 | **$2,048,800** | $2,910,294 | L | 0.35 |

## Subject Property Characteristics

| | | | |
|---|---|---|---|
| Standard Usage Code | RSFR | Last Sale Price | |
| Parcel Number | | Last Sale Date | |
| Gross Living Area | | Sale Type | Subject |
| Lot Area (SqFt) | 435,599 | Tax Assessor Amt. | |
| Bedrooms | 5 | Property Tax Amt. | $63,873 |
| Bathrooms | 7.00 | Cost Per SqFt | |
| Units | | | |
| Year Built | 0 | | |
| Garage | Y | | |

## Recent Sales Data

| Address | Subject<br>8 Woodland Rd | Sale1<br>1021 Creamery Rd | Sale2<br>1406 Wrightstown Rd | Sale3<br>32 Buckman Dr | Sale4<br>28 Keith Ln | Sale5<br>36 Bayshore Dr | Sale6<br>531 Washington Crossing Rd | Sale7<br>11 Holme Ct | Sale8<br>12 Hayhurst Dr | Sale9<br>14 Avondale Dr | Sale10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sale Price | | $1,750,000 | $2,150,000 | $2,365,000 | $2,600,000 | $1,875,000 | $2,100,000 | $2,496,000 | $1,725,000 | $1,825,000 | |
| Sale Date | | 7/16/2023 | 10/5/2023 | 5/16/2024 | 6/30/2024 | 1/31/2024 | 1/4/2024 | 8/16/2023 | 7/16/2023 | 8/16/2023 | |
| Cost Per SqFt | | $438 | $538 | $353 | $406 | $351 | $938 | $326 | $311 | $295 | |
| Tax Assessor Amt. | | | $13,199 | $102,639 | | $114,359 | | $140,209 | | $98,269 | |
| Property Tax Amt. | $63,873 | $19,835 | $13,778 | $18,126 | $22,469 | $20,323 | $11,729 | $23,983 | $18,449 | $16,809 | |
| Gross Living Area | | 3,999 | 3,999 | 6,699 | 6,399 | 5,339 | 2,239 | 7,655 | 5,542 | 6,177 | |
| Lot Area (SqFt) | 435,599 | 369,823 | 136,865 | 435,773 | 54,449 | 48,786 | 416,171 | 52,184 | 63,335 | 102,365 | |
| Bedrooms | 5 | 4 | 4 | 4 | 4 | 4 | 3 | 5 | 4 | 5 | |
| Bathrooms | 7.00 | 3.50 | 3.00 | 6.50 | 4.50 | 8.00 | 2.00 | 6.00 | 4.50 | 5.00 | |
| Garage | Y | Y | | Y | Y | Y | Y | Y | Y | Y | |
| Year Built | 0 | 1994 | 2016 | 1988 | 2016 | 1991 | 1950 | 2009 | 2014 | 1990 | |
| Property Type | RSFR | RSFR | RSFR | RSFR | RSFR | RSFR | RSFR | RSFR | RSFR | RSFR | |
| Units | | | | | | | | | | | |
| Distance | N/A | 0.7548 | 0.9922 | 1.3996 | 1.4102 | 1.4999 | 1.5606 | 1.5707 | 1.6016 | 1.7551 | |

VALUES ARE PROVIDED "AS IS" AND ALL USES ARE AT THE USER'S SOLE RISK. ALL WARRANTIES CONCERNING THE VALUES AND ALL UNDERLYING DATA
AND PROCESSES BOTH EXPRESSED AND IMPLIED ARE EXPRESSLY EXCLUDED INCLUDING WITHOUT LIMITATION ANY WARRANTIES OF MERCHANTABILITY,
ACCURACY, OR FITNESS FOR A PARTICULAR PURPOSE. The value was generated by Freddie Mac's proprietary automated property valuation product , Home Value
Explorer® (HVE). HVE® values are estimated market values calculated using various models and techniques proprietary to Freddie Mac. An HVE value is not an appraisal
and was not prepared by a certified or licensed appraiser. A lender may have used a different property
value to make a credit decision. Values may not be used to reverse engineer or attempt to reverse
engineer the models used to generate the Values or to create any database or product.
If you have questions regarding Freddie Mac's HVE information,
please see Freddie Mac's website at http://www.freddiemac.com/valuation.

Home Value Explorer® is a registered trademark of Freddie Mac. All rights reserved.


First American
MORTGAGE SOLUTIONS

**Disclaimer:** This report: (i) is not an insured product or service or an abstract, legal opinion or a representation of the condition of title to real property, and (ii) is issued exclusively for the benefit of First American Data Tree LLC (Data Tree) customers and may not be used or relied upon by any other person. Estimated property values are: (i) based on available data; (ii) are not guaranteed or warranted; (iii) do not constitute an appraisal; and (iv) should not be relied upon in lieu of an appraisal. Data Tree does not represent or warrant that the information is complete or free from error, and expressly disclaims any liability to any person or entity for loss or damage caused by errors or omissions in the report. If the "verified" logo (☑ⁱ·····ⁱ·) is displayed, or a record is designated "verified," Data Tree's algorithm matched fields from two or more data sources to confirm source data.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| JIGNESH PANDYA and | : | CASE NO.: 24-10440-amc |
| MITAL PANDYA | : | Honorable Ashely M. Chan |
| | : | |
| DEBTORS | : | |
| | : | Hearing Date: October 30, 2024 10:00 AM |
| | : | Objection Date: October 23, 2024 |

**ORDER REOPENING CASE FOR LIMITED PURPOSE OF VACATING THE
AUTOMATIC STAY *NUNC PRO TUNC* TO FEBRUARY 9, 2024 AND FOR RELIEF
FROM THE AUTOMATIC STAY *NUNC PRO TUNC* TO FEBRUARY 9, 2024**

**AND NOW**, this _____ day of _____, 2024, upon Univest Bank & Trust Co.'s Motion to Reopen Case for the Limited Purpose of Vacating the Automatic Stay *Nunc Pro Tunc* to February 9, 2024 and for Relief from Stay *Nunc Pro Tunc* to February 9, 2024 (the "Motion"),

**IT IS ORDERED AND DECREED** that:

1.     Univest Bank & Trust Co.'s Motion is hereby GRANTED; and

2.     The above-captioned matter is hereby reinstated for the sole, limited purpose of granting the relief requested in this Motion; and

3.     The Automatic Stay of all proceedings, as provided in Section 362 of the Bankruptcy Reform Act of 1979 (the "Code") 11 U.S.C. §362, is modified , *nunc pro tunc* to February 9, 2024 with respect to the premises located at 8 Woodland Road, Newtown, PA 18940 (Parcel No. 47-008-007-007) (the "Property").

4.     Movant is permitted to proceed with its state court remedies as to the Property including, but not limited to causing the Property to be offered at Sheriff's Sale, permitting the Sheriff to issue deeds to any purchasers at the Sheriff's sale and allowing at the Sheriff's Sale (or

purchasers' assignees) to take any legal action for enforcement of their right to possession of the

Property.

BY THE COURT:

_____

                                                                                            J.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| JIGNESH PANDYA and | : | CASE NO.: 24-10440-amc |
| MITAL PANDYA | : | Honorable Ashely M. Chan |
| | : | |
| DEBTORS | : | |
| | : | Hearing Date: October 30, 2024 10:00 AM |
| | : | Objection Date: October 23, 2024 |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this __12__ day of __September_____, 2024, I

caused a true and correct copy of Univest's Motion to Reopen Case for the Limited Purpose of

Vacating the Automatic Stay *Nunc Pro Tunc* to February 9, 2024 and for Relief from Stay *Nunc*

*Pro Tunc* to February 9, 2024 to be served upon all parties of record via the Court's ECF system.


_____
Amar A. Agrawal, Esq.